**VIRGINIA:**

In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond, on Friday, the 2nd day of March, 2012.

PRESENT:  KINSER, C.J., LEMONS, GOODWYN and MILLETTE, JJ., and CARRICO, LACY and KOONTZ, S.JJ.

Thomas Alexander Porter,                                  Petitioner,

against        Record No. 091615

Warden of the Sussex I State Prison,                     Respondent.


Upon a Petition for a Writ of Habeas Corpus

Upon consideration of the petition for a writ of habeas corpus filed August 10, 2009, the respondent's motion to dismiss, the petitioner's opposition to the motion to dismiss, the respondent's supplemental motion to dismiss, the petitioner's opposition to the supplemental motion to dismiss, and the respondent's reply to petitioner's opposition, as well as the criminal, appellate, and habeas records in this case, the Court is of the opinion that the motion to dismiss should be granted and the writ should not issue.

Thomas Alexander Porter was convicted in the Circuit Court of the City of Norfolk of capital murder, use of a firearm in the commission of a felony, and grand larceny.  The jury found the aggravating factor of "future dangerousness" and fixed Porter's sentence at death for the capital murder conviction and 22 years' imprisonment for the non-capital offenses.  The trial court imposed the sentences fixed by the jury.  This Court affirmed petitioner's convictions and upheld the

sentence of death in <u>Porter v. Commonwealth</u>, 276 Va. 203, 215, 661 S.E.2d 415, 419 (2008), <u>cert.</u> <u>denied</u>, 556 U.S. 1189 (2009).

CLAIM (I)

In Claim (I), petitioner alleges he was denied the right to a fair trial by an impartial jury because Juror T, who served as a juror during petitioner's trial, failed to disclose during voir dire that Juror T's brother was employed as a deputy sheriff in Chesapeake, Virginia. When asked by defense counsel if he had any family members involved in law enforcement, Juror T stated only that he had a nephew who was a police officer in Arlington County, where the case was being tried after a change of venue from the City of Norfolk. Petitioner alleges that Juror T's service was affected because the victim was a law enforcement officer. Petitioner contends that Juror T found the victim's wife to be a powerful witness and that he found her testimony moving and emotional precisely because Juror T's brother is a deputy sheriff. Petitioner alleges that due to Juror T's concealment of his brother's service as a Chesapeake law enforcement officer, petitioner was unable to conduct meaningful voir dire as to the juror's potential prejudice.

The Court holds that it can consider Claim (I), but it is without merit. The record, including the trial transcript and the affidavits provided in support of the petition for a writ of habeas corpus, demonstrates that Juror T did not disclose his brother's service as a Chesapeake law enforcement officer during voir dire or at any time prior to the conclusion of petitioner's direct appeal. Thus, this

2

constitutional claim could not have been raised at trial or on direct appeal and is ripe for consideration.

In determining whether to grant a new trial based on an allegation that a juror was dishonest during voir dire, this Court applies the two-part test enunciated in McDonough Power Equipment, Inc. v. Greenwood, 464 U.S. 548 (1984), which states that

> to obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial.

Id. at 556.

In this case, defense counsel, Joseph A. Migliozzi, Jr., asked the jurors, "But is anyone here, or a member of your close personal family, worked in law enforcement in any capacity as a volunteer or an employee?" Several prospective jurors, including Juror T, raised hands in response. The entirety of the exchange with Juror T was as follows:

> [JUROR T]: My nephew is an Arlington County police officer.
> MR. MIGLIOZZI: Your nephew?
> [JUROR T]: Yes.
> MR. MIGLIOZZI: In this county here?
> [JUROR T]: Yes.
> MR. MIGLIOZZI: Do you think, with that being the case, that that would impair your ability to sit on this jury and render a fair and impartial verdict in this case?
> [JUROR T]: No.

Upon receiving Juror T's negative response, counsel moved on to the next prospective juror. The record demonstrates that Juror T answered

3

truthfully that he had a nephew who was an Arlington County Police Officer, Arlington County being the jurisdiction where the case was being tried following a change of venue, and that he was not asked, nor did he have the opportunity to answer, if he had any additional relationships with law enforcement officers. Thus, petitioner has failed to demonstrate that Juror T failed to answer honestly a material question during voir dire.

CLAIM (II)

In Claim (II), petitioner alleges the Commonwealth failed to disclose exculpatory information as required by Brady v. Maryland, 373 U.S. 83 (1963), and presented false testimony or allowed it to go uncorrected in violation of Napue v. Illinois, 360 U.S. 264 (1959), and Giglio v. United States, 405 U.S. 150 (1972).

As the Court has stated previously:

> In Brady[], the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87. Whether evidence is material and exculpatory and, therefore, subject to disclosure under Brady is a decision left to the prosecution. Pennsylvania v. Ritchie, 480 U.S. 39, 59 (1987). Inherent in making this decision is the possibility that the prosecution will mischaracterize evidence, albeit in good faith, and withhold material exculpatory evidence which the defendant is entitled to have under the dictates of Brady. If the defendant does not receive such evidence, or if the defendant learns of the evidence at a point in the proceedings when he cannot effectively use it, his due process rights as enunciated in Brady are violated. United States v. Russell, 971 F.2d 1098 (4th Cir. 1992); United States v. Shifflett, 798 F. Supp. 354 (1992); Read v. Virginia State Bar, 233 Va. 560, 564-65, 357 S.E.2d 544, 546-47 (1987).

4

. . . .

> Exculpatory evidence is material if there is a
> reasonable probability that the outcome of the proceeding
> would have been different had the evidence been disclosed to
> the defense. "A reasonable probability" is one which is
> sufficient to undermine confidence in the outcome of the
> proceeding. United States v. Bagley, 473 U.S. 667, 682
> (1985); Robinson v. Commonwealth, 231 Va. 142, 151, 341
> S.E.2d 159, 164 (1986).

Muhammad v. Warden, 274 Va. 3, 4, 646 S.E.2d 182, 186 (2007) (quoting

Muhammad v. Commonwealth, 269 Va. 451, 510, 619 S.E.2d 16, 49-50

(2005) (quoting Bowman v. Commonwealth, 248 Va. 130, 133, 445 S.E.2d

110, 111-12 (1994))), cert. denied, 552 U.S. 1319 (2008).

Furthermore, this Court has previously held that, "[i]n order to

find that a violation of Napue occurred[,] . . . we must determine

first that the testimony [at issue] was false, second that the

prosecution knew of the falsity, and finally that the falsity affected

the jury's judgment." Teleguz v. Commonwealth, 273 Va. 458, 492, 643

S.E.2d 708, 729 (2007), cert. denied, 552 U.S. 1191 (2008).

(A)

In Claim (II)(A), petitioner alleges the Commonwealth was

required to, but did not, disclose that a prosecution witness, Jim

Downey, was under arrest for a probation violation that exposed him to

a 17 year prison sentence at the time he testified at petitioner's

trial. Petitioner contends that the Commonwealth failed to disclose

that the prosecutor pursuing the probation violation charges against

Downey was the same prosecutor who elicited Downey's testimony at

petitioner's trial, and that Downey was arrested on the same day that

5

he provided testimony in petitioner's trial, and then later released on his own recognizance.

Because the information regarding Downey's arrest was available to petitioner via public records in existence at the time of his direct appeal, the Court holds that Claim (II)(A) is barred because this non-jurisdictional issue could have been raised on direct appeal and, thus, is not cognizable in a petition for a writ of habeas corpus. Slayton v. Parrigan, 215 Va. 27, 29, 205 S.E.2d 680, 682 (1974), cert. denied, 419 U.S. 1108 (1975).

(B)

In Claim (II)(B), petitioner alleges the Commonwealth failed to disclose to him that Simone Coleman, a prosecution witness, contradicted the claim of Selethia Anderson, another prosecution witness, of having seen the shooting occur. Relying on an affidavit by Coleman, petitioner argues that Anderson's testimony that she was sitting on her front porch when she saw the police vehicle arrive, watched as petitioner approached the officer and shot him, and observed petitioner run towards his parked vehicle and point his gun in her direction, causing her to flee inside with her baby, was subject to impeachment by Coleman's statement that she lived in the same apartment and did not see anyone sitting on the porch during the same time frame.

The Court need not resolve questions related to whether this information was material because the Court holds that the evidence was not favorable to petitioner, as it did not contradict the testimony of

6

Selethia Anderson and, therefore, failure to disclose was not a violation of Brady. In order to show a violation of Napue, petitioner must show that Anderson's testimony was false, that the prosecution knew of the falsity, and that the falsity affected the jury's judgment. Napue, 360 U.S. at 269-71. See Teleguz, 273 Va. at 491-92, 643 S.E.2d at 729.

The record, including the trial transcript and Coleman's affidavit, demonstrates that Anderson was sitting on her front porch and saw a police vehicle pull up and park across the street. Anderson witnessed petitioner shoot the officer, and then retreated to her home when she saw petitioner move toward his vehicle and point a gun in her direction. Coleman's trial testimony and affidavit demonstrate that she noticed the police vehicle pulling up the road as she was "coming out of [her] home and starting to cross 28th Street." After Coleman walked down the street, she glanced back and witnessed petitioner shoot the police officer. Coleman ran away from the shooting, but then returned to her apartment after she saw the petitioner flee. The witnesses' testimony supports the inference that Anderson entered and exited the porch in between the time that the porch would have been visible to Coleman as she exited her apartment and walked down the street. Furthermore, Coleman's affidavit states only that she "most likely" would have noticed if Anderson had been sitting on the porch when Coleman exited the building.

(C)

In Claim (II)(C), petitioner alleges the Commonwealth was

7

required to, but did not, disclose information regarding previous incidents of the victim's unprofessional conduct as a Baltimore, Maryland police officer. Petitioner contends the Commonwealth did not provide exculpatory evidence regarding a 1994 incident in which Officer Reaves handcuffed a suspect on the ground and slashed the tires of the suspect's bicycle. During this incident, a bystander, George Hite, objected and was arrested for disorderly conduct. A fellow Baltimore police officer swept Hite's legs out from under him, causing Hite to hit his head resulting in Hite's death. In a subsequent civil lawsuit, Officer Reaves stated he believed his fellow officer had acted appropriately, although eyewitnesses contradicted Reaves' version of events.

Another incident of Officer Reaves' alleged unprofessional conduct occurred in 2001, when he allegedly engaged in a pursuit of a dirt bike in contravention of police policy. When Officer Reaves caught up to the dirt bike, the driver lost control of the bike, was thrown into a utility pole and died of head injuries. Petitioner argues that evidence regarding these incidents would have undermined the Commonwealth's assertions that Officer Reaves was not aggressive, bolstered petitioner's defense that Officer Reaves drew his gun and pointed it at petitioner without provocation, and created a reasonable probability that at least one juror would have concluded the Commonwealth did not establish "future dangerousness" during the sentencing phase.

The Court need not resolve questions related to whether this

information was material because the Court holds that the evidence was not known to the Commonwealth. The record, including a 2009 Freedom of Information Act response from the Assistant City Attorney for the City of Norfolk and the affidavit of Philip Evans II, Deputy Commonwealth's Attorney for the City of Norfolk, demonstrates that the Commonwealth did not possess any information concerning the 1994 or 2001 incidents. Furthermore, pursuant to Brady, there is no obligation to produce information available to the defendant from other sources, including diligent investigation by the defense. See Fullwood v. Lee, 290 F.3d 663, 686 (4th Cir. 2002); Cherrix v. Commonwealth, 257 Va. 292, 302-03, 513 S.E.2d 642, 649, cert. denied, 528 U.S. 873 (1999).

(D)

In Claim (II)(D), petitioner contends that the Commonwealth failed to disclose that Juror T had a brother who was a deputy sheriff in the City of Chesapeake.

The Court finds that Claim (II)(D) is without merit. The record, including the affidavits of the Deputy Commonwealth's Attorney and petitioner's counsel, demonstrates that the Commonwealth received the venire list the day before petitioner's trial, and petitioner's counsel received it the day of trial. The venire list provided no indication that Juror T had a brother who was a deputy sheriff in another jurisdiction. Thus, petitioner has not established that the Commonwealth possessed any additional information that was not provided to petitioner. Moreover, the record does not show that the

9

Commonwealth knew Juror T's brother was employed as a deputy sheriff.

Petitioner argues that all of the allegedly exculpatory evidence must be considered in its totality when determining the materiality of the evidence. Petitioner is correct that when considering materiality, we consider suppressed evidence as a whole, not item by item. See Workman v. Commonwealth, 272 Va. 633, 645, 636 S.E.2d 368, 375 (2006); Kyles v. Whitley, 514 U.S. 419, 436 (1995). However, we do not reach the issue of materiality unless we first determine that the evidence was not available to petitioner, or is favorable to the accused because it is exculpatory or because it may be used for impeachment. Workman, 272 Va. at 644-45, 636 S.E.2d at 374; Muhammad, 274 Va. at 13, 646 S.E.2d at 191. The allegedly withheld evidence in Claim (II)(B) was not favorable to the accused. Furthermore, the evidence in Claims (II)(C) and (II)(D) was as available to the petitioner as it was to the Commonwealth. For these reasons, we will not address the issue of materiality, and we further hold that Claims (II)(B), (II)(C), and (II)(D) are without merit.

## CLAIM (III)

In several portions of Claim (III), petitioner alleges counsel were ineffective for failing to investigate Porter's childhood and educational history. Counsel Joseph A. Migliozzi, Jr., executed an affidavit on September 8, 2009 recounting counsel's recollections that the investigation was conducted and that counsel made strategic choices concerning additional investigation based upon the information counsel had received. Counsel was unable, however, to provide much

10

detail because counsel's notes had been retained by the Office of the Capital Defender, which would not allow counsel to review the files citing privilege on behalf of petitioner. This Court ruled that petitioner had waived his privilege with respect to counsel's notes and had waived the work product protection as to materials relating to petitioner's claims that counsel had failed to investigate petitioner's childhood and educational history. The circuit court subsequently reviewed the materials in camera and ordered that certain documents be turned over to the respondent for review by counsel.

In his supplemental motion to dismiss, the respondent relies on a second affidavit also executed by counsel on August 2, 2011 and reasserts the motion for production of counsel's files in their entirety and contends that although the files confirmed the existence of extended interviews with Bernice Porter and Cora Gaston and twelve separate interviews with school officials, counsel was unable to provide further details because of the redacted nature of the notes he received. Relying on counsel's assertion that the files confirm counsel's earlier recollection of his investigation and strategic choices and noting that petitioner has provided no evidence that such recollection is inaccurate, the Court denies respondent's latest motion for the production of counsel's files and holds that the record is sufficient for the Court to address petitioner's claims.

(A)

In Claim (III)(A), petitioner alleges he was denied the effective assistance of counsel because counsel failed to request and obtain a

11

jury instruction on the lesser-included offense of first-degree murder. Petitioner asserts that without proof of the gradation element that the killing was for the purpose of interfering with the law enforcement officer's official duties, the killing of an officer is no more than first-degree murder. Petitioner testified that Officer Reaves grabbed petitioner's arm and pointed a gun at petitioner without provocation. Petitioner contends that this testimony was corroborated in part by Reggie Copeland and Melvin Spruill, and established that petitioner believed Officer Reaves was not acting in his official capacity as a law enforcement officer at the time of the shooting. Petitioner argues counsel's failure to request the instruction was not strategic because counsel fought for instructions on other lesser offenses, and there was more than a scintilla of evidence to support granting the first-degree murder instruction.

The Court holds that Claim (III)(A) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland v. Washington, 466 U.S. 668, 687 (1984). The record, including the trial transcript and the September 8, 2009 affidavit of counsel, demonstrates that counsel made a strategic decision not to request a jury instruction that was not supported by the evidence. Porter testified that he knew there was a warrant out for his arrest, that he knew he was carrying a firearm although he was a convicted felon, and that he saw Officer Reaves in his police uniform. Although Porter also testified that he was not thinking

12

about the warrant and that he thought Officer Reaves was "pulling a gun on him," accepting petitioner's testimony as true, and viewing the evidence in the light most favorable to him, nothing supports a finding that Porter reasonably believed the officer was not engaged in the execution of official duties at the time of the shooting. Furthermore, central to petitioner's defense was counsel's argument that petitioner did not premeditate his action. Therefore, a first-degree murder instruction, which would necessarily include the element of premeditation, would have been inconsistent with counsel's theory. Counsel's strategic decision to not request a first-degree murder instruction was reasonable under counsel's theory of the case. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

(B)

In Claim (III)(B), petitioner alleges he was denied the effective assistance of counsel because counsel failed to emphasize Reggie Copeland's testimony that he saw petitioner exit the apartment building as Copeland ran up to Officer Reaves, who had parked in front of the apartment building. Petitioner asserts this testimony directly conflicted with the testimony of Latoria Arrington, and of other witnesses in the apartment, that petitioner did not leave the apartment until she said, "Why is Reggie talking to the police officer?" According to petitioner, Copeland's testimony, when viewed

13

with the petitioner's testimony, was sufficient to cast doubt on the prosecution's argument that petitioner knew he would be confronting a police officer when he left the apartment. Petitioner continues that despite the fact that the timing sequence was critical, his counsel only argued to the jury that Arrington and the other apartment occupants could not have seen out of the window due to the positioning of the blinds. Petitioner contends that counsel failed to emphasize that Copeland's "far more powerful and credible" testimony undermined Arrington's credibility, and created reasonable doubt that Reaves was killed for the purpose of interfering with his official duties.

The Court holds that Claim (III)(B) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript and the September 8, 2009 affidavit of counsel, demonstrates that counsel reasonably chose to pursue a trial strategy of attacking the credibility of the Commonwealth's witnesses, Reggie Copeland and Latoria Arrington. Furthermore, petitioner's own statement established that he saw Officer Reaves on the sidewalk before the shooting, which would support the Commonwealth's argument that petitioner chose to confront Officer Reaves. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

(C)

In Claim (III)(C), petitioner alleges he was denied the effective

14

assistance of counsel because counsel failed to adequately challenge the authenticity of the third jailhouse letter that petitioner allegedly wrote to a fellow inmate indicating that he shot Officer Reaves because petitioner believed a warrant for his arrest existed, and he did not want to return to jail. Petitioner asserts that counsel should have obtained an expert in handwriting analysis to opine that someone other than petitioner wrote the note.

The Court holds that Claim (III)(C) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript, demonstrates that petitioner's counsel objected to the admission of the third jailhouse letter based on a lack of foundation, and the court overruled the objection. Petitioner has failed to establish that a handwriting expert would have opined that petitioner did not write the letter. Henry Chatman, the recipient of the letter, testified that he understood the letter came from petitioner. No evidence, other than petitioner's testimony, suggested the letter was not authentic. The affidavit of Nancy McCann, a document and handwriting examiner, submitted by petitioner, does not support petitioner's contention that he did not write the letter. McCann states only that "it cannot be conclusively determined through the application of accepted methods and techniques" that petitioner wrote the disputed letter. In fact, petitioner's counsel had obtained the services of an expert handwriting examiner, and after reviewing the expert's possible testimony, counsel made a strategic decision to not

call the expert. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

(D)

In Claim (III)(D), petitioner alleges he was denied the effective assistance of counsel because counsel failed to conduct an adequate investigation into petitioner's childhood and present important mitigating evidence regarding the abuse petitioner received as a child. Petitioner asserts counsel should have presented evidence that he was physically beaten by his caregivers and grew up amidst neighborhood and family violence. Petitioner contends that counsel conducted only cursory interviews with petitioner's mother and other adults in his life as he grew up, and did not follow up on evidence of physical abuse. Petitioner further asserts counsel's failure resulted in depriving his mental health expert of information crucial to his evaluation, and undermined confidence in the jurors' sentencing phase decisions because they were not provided with a proper context for understanding petitioner's behavior.

The Court holds that Claim (III)(D) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript, demonstrates that counsel presented mitigating evidence to the jury through testimony about the violent neighborhood in which petitioner was raised, the abuse he observed his mother receive, the loss of a

16

younger sibling, the lack of parental involvement and supervision, and the learning and emotional difficulties petitioner experienced in school. Petitioner's mother, Bernice Porter, specifically denied that any incidents of physical or sexual abuse of petitioner were ever reported. The affidavits of counsel demonstrate that counsel investigated and interviewed numerous friends and family members, and made the strategic decision not to call one of petitioner's caregivers because she would not have made a good witness. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

(E)

In Claim (III)(E), petitioner alleges he was denied the effective assistance of counsel because counsel failed to reasonably investigate the Commonwealth's evidence of some of petitioner's prior convictions and unadjudicated bad acts. Petitioner contends that counsel was unable to rebut this aggravating evidence because counsel did not investigate these incidents and merely whispered questions about the incidents to petitioner as the Commonwealth's witnesses were taking the stand. According to petitioner, a proper investigation would have uncovered valuable mitigating information that would have explained how petitioner was provoked prior to each incident and how petitioner was punished afterwards.

Regarding another incident, petitioner alleges he punched another inmate in 1998 because the other inmate had attacked petitioner for no

17

reason. Petitioner alleges counsel failed to discover that Corrections Officer Adkins' testimony of an incident in which petitioner grabbed Adkins' shirt through the cell bars and banged Adkins against the bars did not match Adkins' contemporaneous report of the incident. In addition, contrary to Adkins' testimony, petitioner alleges that after the incident petitioner was mistreated and punished. Concerning another incident, petitioner alleges that an inmate attacked by petitioner in 1997 had provoked petitioner by bumping into him during a fight the inmate was having with two other men, and by uttering "fighting words."

Petitioner contends that counsel made petitioner's reaction appear less reasonable by characterizing the "fighting words" as a homosexual advance. Petitioner also alleges counsel further failed to ascertain that on February 15, 2007, petitioner did not "refuse to go to court, saying he was not going to court without a fight." Petitioner states that he had questioned deputies as to a change in the strip search procedure, and that deputies responded by rushing the cell, punching and kicking petitioner, shooting petitioner with "mace balls," and pushing petitioner into an elevator wall. Petitioner alleges that counsel refused to take any action despite petitioner's complaints and "failed to confront witnesses about the unprovoked and unjustified quality of their actions." Finally, petitioner contends counsel failed to rebut the Commonwealth's argument that petitioner ran away from police into a "stranger's house" by establishing that petitioner lived in the townhouse with his mother.

18

The Court holds that Claim (III)(E) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Petitioner fails to allege how the punishment or response petitioner may have received following each event serves to mitigate petitioner's actions. The record, including the trial transcript and the September 8, 2009 affidavit of counsel, demonstrates that counsel had investigators review the nearly 100 convictions and unadjudicated bad acts the Commonwealth intended to rely on during the sentencing phase of trial and obtain as much information as possible about each incident. Counsel personally visited Wallens Ridge and Red Onion State Prisons to obtain information about the incidents that took place while petitioner was an inmate at these facilities. Counsel also cross-examined witnesses about the incidents. Counsel attempted to elicit testimony that a guard had overheard the victim in the 1998 incident say something to petitioner prior to the altercation, which the officer denied. Counsel further elicited testimony that petitioner required medical treatment after the 1998 incident.

As to the Adkins incident, counsel specifically questioned Adkins as to whether his testimony had changed from his initial report, and Adkins clarified his testimony. As to the 1997 incident, counsel attempted to present evidence that the victim verbally provoked petitioner, but the court sustained the Commonwealth's objection to such testimony on the grounds that "words never justify an assault." Counsel reasonably followed up with questions regarding whether the

19

inmate ever made physical advances toward petitioner, in order to demonstrate that petitioner had been provoked. Counsel also pursued this line of questioning because petitioner had told counsel that the victim was "queer."

As to the February 15, 2007 incident, counsel questioned the testifying deputy as to whether the officers had changed the procedures by which petitioner was searched to find out "if there was any particular reason why this may have caused this event to take place." Further, the deputy testified that petitioner was physically handled, by stating officers "took him down," held him against a wall so he could not move, pushed him into his cell, and "forced him in there hard." Finally, petitioner cites no support in the record for his assertion that he resided in the townhouse to which he fled during a police chase. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

### (F)(1)

In Claim (III)(F)(1), petitioner alleges he was denied the effective assistance of counsel because counsel failed to present accurate evidence of petitioner's experience in juvenile detention and the conditions under which he resided. Petitioner alleges "the prosecution painted juvenile detention as offering Porter a wealth of benefits that he rejected," and contends that counsel should have established that the juvenile detention facilities were "violent,

20

overcrowded, stressful, and unsanitary." Relying on a 1992 report, and affidavits from a former Norfolk Detention Center Supervisor and a fellow inmate, petitioner alleges that treatment and rehabilitation were impossible due to the conditions, and that the juveniles were in the facilities, "first and foremost, for punishment."

The Court holds that Claim (III)(F)(1) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript, demonstrates that the Commonwealth argued that petitioner was committed to several juvenile detention centers, which included "all the services that can be offered." Further, petitioner does not allege that he was denied any specific support services. To the contrary, the affidavit submitted by petitioner from Lanett W. Brailey, a teacher at one of the juvenile correctional centers in which petitioner resided, indicates that petitioner was recommended for, and received, special education classes. Petitioner fails to allege how the sentencing outcome would have been different had counsel presented information concerning the general conditions of these facilities. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

(F)(2)

In Claim (III)(F)(2), petitioner alleges he was denied the effective assistance of counsel because counsel failed to present

21

evidence of the conditions under which petitioner lived while in prison, which would have given a context to jurors for his prison behavior and shown that he acted in the interest of self-preservation. Petitioner contends that counsel should have presented evidence that petitioner lived for four years in stressful and inhumane conditions, and that inmates at Wallens Ridge and Red Onion State Prisons were subjected to being beaten, electrically shocked, and strapped to a bed. Petitioner argues that guards frequently called inmates, including petitioner, by racial slurs. Specifically, petitioner claims that guards harassed him due to his religious beliefs and because he had a female friend of a different race. According to petitioner, prisoners were often punished severely for even minor infractions.

The Court holds that Claim (III)(F)(2) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Other than his claims that he was verbally abused because of his relationship with a woman of another race and his religious beliefs, petitioner does not allege that the evidence he contends counsel should have proffered was related to petitioner's individual experience. This Court has held that "evidence regarding the general nature of prison life" is not admissible even if used to rebut the aggravating factor of future dangerousness. Bell v. Commonwealth, 264 Va. 172, 201, 563 S.E.2d 695, 714 (2002)(internal quotation marks and alteration omitted), cert. denied, 537 U.S. 1123 (2003). Furthermore, petitioner fails to allege how the sentencing

22

outcome would have been different had the jury understood that petitioner's violent acts in prison were fueled by petitioner's alleged need to act in the interest of self-preservation given the general nature of prison life or petitioner's having been taunted. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

## (F)(3)

In Claim (III)(F)(3), petitioner alleges he was denied the effective assistance of counsel because counsel failed to present evidence of petitioner's successful adaptation to prison life. Petitioner asserts that he was well regarded by fellow inmates who considered him to be generous and able to avoid trouble. Petitioner received a report from a counselor at Red Onion that he was a satisfactory worker as a "Houseman," and was a respectful employee. Petitioner contends that this information, had it been presented to jurors, would have lessened his moral culpability and tended to show that he did not pose a future danger to society if sentenced to life imprisonment.

The Court holds that Claim (III)(F)(3) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. During the penalty phase, counsel argued that petitioner's incarceration for life was appropriate because petitioner had been in the penitentiary for seven years and had

23

incurred only two infractions, and that in all of his previous convictions he had either pleaded guilty or cooperated against a co-defendant.  Petitioner has not established that additional testimony from fellow inmates, who would be subject to cross-examination, or the admission of one prison record indicating that in an annual review petitioner received a satisfactory work report, but also stating that petitioner needed to "abstain from socially inappropriate behavior," would have increased the likelihood of the jury sentencing petitioner to life imprisonment.  Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

(G)

In Claim (III)(G), petitioner alleges he was denied the effective assistance of counsel because counsel failed to adequately investigate petitioner's educational history and present the mitigating factors that would have been revealed by such investigation.  In Claim (III)(G)(1), petitioner asserts counsel should have presented evidence that petitioner's previous teachers and social workers identified petitioner's mother and great aunt as disinterested and uninvolved.  Petitioner contends that he had special needs in his early educational development and he did not receive stability and security from his home life.  In Claim (III)(G)(2), petitioner asserts counsel should have presented evidence that his early educational experience was disrupted by his chaotic home life in which he was frequently

24

transferred to different schools and different homes.  Petitioner contends that his unstable situation resulted in his lack of a genuine chance to succeed in school, and that counsel was unable to effectively rebut the Commonwealth's assertions that petitioner was solely responsible for his shortcomings, because counsel presented some school records, but failed to call as witnesses, former educators who remembered petitioner's positive behavior and character.  In Claim (III)(G)(3), petitioner asserts counsel should have presented evidence that petitioner was identified in his early school years as needing special education and psychological services.  In Claim (III)(G)(4), petitioner asserts counsel failed to adequately investigate petitioner's disciplinary notices in school, and such investigation would have shown petitioner's conduct was a manifestation of his "handicapping condition," not malicious intent.  Petitioner contends that had counsel accurately presented information regarding his educational experiences, the evidence would have rebutted the Commonwealth's contentions that petitioner rejected efforts to help him, and would have humanized him by showing that his difficulties were the predictable product of his disabilities, not evil or malice.

The Court holds that Claim (III)(G) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland.  The record, including the affidavits of counsel, demonstrates that counsel thoroughly investigated petitioner's school record, including conducting twelve separate interviews with school officials in Norfolk and New Jersey.  The trial

25

transcript demonstrates that counsel presented an extensive amount of testimony and evidence relating to petitioner's educational challenges and emotional and behavioral difficulties in school. Counsel presented testimony from seven teachers and one school psychiatrist and submitted school records into evidence, including petitioner's individual education plans and psychological reports. The testimony showed that petitioner was classified in school at various times as learning disabled, emotionally disturbed, and neurologically impaired. Three teachers testified that petitioner did not pose a behavioral problem in school, but that he was immature, solitary, cried a lot, never smiled, and needed special services. One teacher, Katherine Towler, stated that petitioner was cooperative during school testing and was a willing student, but that his disabilities led to frustration. Another teacher, Grace Houchins, testified that petitioner had "no village" to support him, and "was in a world almost by himself." Furthermore, Houchins had opined that, at the time petitioner was in school, "necessary help now will help prevent much sorrow down the road."

Counsel introduced records of the school psychiatrist, which showed the psychiatrist believed petitioner's emotional problems were causing his academic issues. The affidavit of counsel demonstrates that counsel contacted "nearly all" of petitioner's living teachers in Norfolk, and traveled to New Jersey to interview additional teachers and principals. In closing argument, counsel noted petitioner's frequent school transfers and his long existing classification in

26

school as emotionally disturbed. Counsel argued the choices petitioner made were derived from the circumstances he was exposed to throughout his life, and that petitioner had no model to guide him and no one to instruct him. Petitioner does not identify any additional non-cumulative mitigating evidence derived by his educational history that he contends counsel failed to present. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

(H)

In Claim (III)(H), petitioner alleges he was denied the effective assistance of counsel because counsel failed to offer expert mental health evidence. Petitioner asserts that counsel should have presented testimony by Dr. Stejskal, petitioner's court appointed defense psychologist, to show that petitioner's experiences of childhood abandonment and abuse derailed his emotional and psychological development. Dr. Stejskal would have opined that petitioner's adjustment was compromised by neuro-developmental problems and his mother's unwillingness to provide him with proper supervision and structure. Petitioner contends that, had counsel provided Dr. Stejskal's testimony, it would have rebutted the Commonwealth's claim that petitioner's conduct was solely the result of his "choices" rather than the outcome of circumstances over which he had no control.

The Court holds that Claim (III)(H) satisfies neither the

"performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the September 8, 2009 affidavit of counsel, demonstrates that counsel made a strategic decision not to present Dr. Stejskal's testimony because the introduction of such evidence would have allowed the Commonwealth to present damaging testimony from its own expert, Dr. Leigh D. Hagan. Dr. Hagan's opinions would have contradicted and undercut Dr. Stejskal's testimony, as Dr. Hagan's report stated that "while certain factors of [petitioner's] childhood history were mitigating because they were beyond his control, the much larger portion of the defendant's life reflects his own independent decision making capacity," and that "[t]he way in which he used that capacity compromised his character." Counsel's decision to present evidence of petitioner's emotional and neurological issues through his school records and not present Dr. Stejskal's testimony prevented the Commonwealth from submitting Dr. Hagan's opinions as rebuttal evidence. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

(I)

In Claim (III)(I), petitioner alleges he was denied the effective assistance of counsel because counsel failed to discover and use evidence of Officer Reaves' history of unprofessional conduct while he

28

was a Baltimore City police officer.[1]  Petitioner contends that counsel

should have requested Reaves' personnel file when Reaves' previous

performance was obviously relevant because the main factual dispute at

trial was whether Reaves approached petitioner forcefully and with his

gun drawn.  Petitioner contends that had the jury been presented with

such evidence, there is a reasonable probability that he would not

have been convicted of capital murder and at least one juror would

have found that "an aggravating factor was not proven beyond a

reasonable doubt or that death was not the most appropriate

punishment."

The Court holds that Claim (III)(I) satisfies neither the

"performance" nor the "prejudice" prong of the two-part test

enunciated in Strickland.  Petitioner acknowledges that counsel was

not on notice of Reaves' alleged prior employment history.  Petitioner

fails to articulate how personnel records relating to Officer Reaves'

employment as a Baltimore police officer, which do not show any formal

disciplinary proceedings and do not reference any instances of Officer

Reaves inappropriately displaying or using his service weapon, would

have been relevant in bolstering petitioner's testimony that Officer

Reaves forcefully approached petitioner with his gun drawn.  Thus,

petitioner has failed to demonstrate that counsel's performance was

deficient or that there is a reasonable probability that, but for

---

[1] In support of this claim, petitioner attempts to incorporate
"the availability, substance, and prejudice resulting from counsel's
omissions" from Claim (II)(C).  The Court declines to consider these
allegations "by reference."

counsel's alleged error, the result of the proceeding would have been different.

(J)

In Claim (III)(J), petitioner alleges that, if this Court holds that the Brady claim raised in Claim (II)(D) is defaulted because counsel should have raised it at trial and on direct appeal, he was denied the effective assistance of counsel because counsel failed to raise the claim that Juror T was biased due to his brother's employment as a law enforcement officer at trial and on direct appeal. Petitioner further contends that participation of a biased juror is a "structural error" and prejudice is presumed. See, e.g., Jackson v. Warden, 271 Va. 434, 436, 627 S.E.2d 776, 781 (2006) (describing "structural error" as "defying harmless error review").

The Court holds that Claim (III)(J) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript and the September 8, 2009 affidavit of counsel, demonstrates that counsel did not know that Juror T had a brother in law enforcement. More importantly, petitioner has provided no admissible evidence that Juror T was biased against petitioner as a result of his brother's employment. Petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

(K)

30

In Claim (III)(K), petitioner alleges he was denied the effective assistance of counsel because counsel failed to request that Officer Reaves' gun holster be tested for fingerprints. Petitioner asserts such testing would have shown that petitioner's fingerprints were not on the snap and thumb break of the holster, which would have supported his testimony that Officer Reaves had already drawn his gun when petitioner shot him, and undermined the Commonwealth's assertion that petitioner took the gun from Officer Reaves' holster.

The Court holds that Claim (III)(K) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Petitioner has failed to proffer any evidence that, had fingerprint testing been done, it would have shown the absence of his fingerprints on Officer Reaves' holster, or that such evidence would have supported petitioner's version of the events. Although the testimony at trial demonstrated that the holster snap would have had to be released in order for the gun to be removed, there was no evidence that unsnapping the device required a maneuver that would leave a clear and identifiable fingerprint. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

(L)

In Claim (III)(L), petitioner alleges he was denied the effective assistance of counsel because counsel failed to renew and expand the

31

motion to recuse the trial judge.  Petitioner also alleges that counsel failed to object every time the trial judge engaged in acts of bias against petitioner.[2]

The Court holds that Claim (III)(L) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland.  The record, including the trial transcript and the pretrial motions, demonstrates that counsel did file a motion for the trial judge to recuse himself prior to trial based on the fact that the judge was a former prosecutor whose office had prosecuted petitioner for several offenses, including at least one that had been admitted into evidence.  Counsel renewed the motion for recusal, on different grounds, at the end of trial.  Petitioner has not alleged what further actions counsel should have taken to object to the trial judge's participation on this basis.  Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

CLAIM (IV)

In Claim (IV), petitioner alleges he was deprived of his due process right to a fair trial because the trial judge had a preexisting bias against petitioner based on the judge's former career as a prosecutor.

---

[2] In support of this claim, petitioner attempts to incorporate petitioner's allegations in Claim (IV) that the trial court deprived petitioner of his right to a fair trial.  The Court declines to consider these allegations "by reference."

The Court holds that Claim (IV) is barred because this non-jurisdictional issue could have been raised at trial and on direct appeal and, thus, is not cognizable in a petition for a writ of habeas corpus. Slayton, 215 Va. at 29, 205 S.E.2d at 682.

Upon consideration whereof, petitioner's motion to supplement the appendix, motions for production of documents and for appointment of experts, and prayer for a plenary hearing are denied.

Upon consideration of the respondent's "Motion to Strike Appendix Entries," the petitioner's opposition and the respondent's reply, the Court declines to strike the entries. The Court will, however, apply the appropriate evidentiary rules and the petitioner's assertions that certain statements are not being offered for the truth of the matters asserted when considering the admissibility of the exhibits and of any statements contained in the exhibits.

Upon consideration of the petitioner's "Motion to Strike the Warden's Evidence Proffered with the Motion to Dismiss," the respondent's opposition and the petitioner's reply, the Court denies petitioner's motion to strike all of the Warden's evidence, holding that the submission of affidavits is permissible pursuant to Code § 8.01-660. The Court will, however, apply the appropriate evidentiary rules and the respondent's assertions that certain statements are not being offered for the truth of the matters asserted when considering the admissibility of the exhibits and statements contained therein.

Accordingly, for the reasons stated, the petition is dismissed.

33

This order shall be published in the Virginia Reports.

A Copy,

Teste:

Patricia L. Harrington, Clerk